IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| MICHAEL ANTONIO COBB, Sr., and PATRICIA ANN COBB, as surviving parents of MICHAEL ANTONIO COBB, Jr., deceased, | ) | CIVIL ACTION FILE NO. |
| | ) | ________________________ |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| SPALDING COUNTY, GEORGIA, | ) | |
| LIEUTENANT MICHAEL STOREY, in his individual capacity. | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, MICHAEL ANTONIO COBB, Sr. and PATRICIA ANN COBB, parents and wrongful death beneficiaries of MICHAEL ANTONIO COBB, Jr., deceased, by and through undersigned counsel, and hereby file this Complaint for Damages against the above-named Defendants.

## INTRODUCTION

This is a civil rights action under 42 U.S.C. § 1983, the Fourth Amendment of the United States Constitution, and Georgia law. Decedent Michael Antonio Cobb, Jr. (hereinafter "Decedent") was unlawfully shot and killed by Spalding

County Sheriff's Lieutenant Michael Storey (hereinafter "Lt. Storey") in violation of Decedent's Fourth Amendment rights. Defendant Spalding County is liable for this unlawful shooting under the *Monell* doctrine for its failure to adequately train its sheriff's deputies on pursuing and apprehending unarmed suspected felons.

**PARTIES, JURISDICTION & VENUE**

1.

Plaintiffs Michael Antonio Cobb, Sr. and Patricia Ann Cobb are the biological parents of decedent Michael Antonio Cobb, Jr. The decedent did not leave a surviving spouse or children, and Plaintiffs are entitled to bring this action.

2.

Defendant Lt. Michael Storey is a sheriff's deputy employed by the Spalding County Sheriff's Office. Lt. Storey may be served at the headquarters of the Spalding County Sheriff's Office located at 401 Justice Blvd., Griffin, GA 30224.

3.

At all times relevant to this lawsuit, Lt. Storey acted under the color of state law.

4.

Defendant Spalding County is a county whose policies and practices were the moving force in the constitutional violation alleged herein. Defendant Spalding

County may be served at its administrative offices located at 119 E. Soloman St., Griffin, GA 30223.

5.

At all times relevant hereto, Defendant Spalding County acted under the color of state law.

**JURISDICTION AND VENUE**

6.

This case presents a federal question under the Fourth Amendment of the United States Constitution, and this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress deprivation of rights guaranteed by the laws and the Constitution of the state of Georgia.

7.

The Court has personal jurisdiction over the Defendants under 28 U.S.C. § 1367 and Georgia Const. Art. I, § 1, ¶ XIII.

8.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and the Defendants reside with this district.

9.

All of the parties herein are subject to the jurisdiction of this Court.

10.

Attorney's fees and costs are authorized under 42 U.S.C. § 1988.

11.

Plaintiffs have standing to bring their Georgia law claims because they timely submitted an Ante Litem Notice of Claims pursuant to O.C.G.A. § 36-33-5. A copy of the Ante Litem Notice and proof of delivery will be attached hereto as Exhibit A.

## **FACTUAL ALLEGATIONS**

12.

Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 – 11 as if fully set forth herein.

13.

On December 9, 2023, decedent Michael Antonio Cobb (hereinafter "Decedent") was staying at the residence located at 431 Lakeview Street, Griffin, GA 30223 (hereinafter the "Lakeview Residence").

14.

Decedent was staying with his girlfriend, Marshay Dix, along with Celestine Whitfield and Rodrigus Mack at the Lakeview Residence.

15.

At approximately 11:30 p.m., a fight broke out between Mack and Decedent at the Lakeview Residence which eventually escalated, and gunshots were exchanged between the two.

16.

Following the shooting, Mack fled from the scene in a gray van, while Decedent fled on foot.

17.

At approximately 11:51 pm on December 9, 2023, the Spalding County Sheriff's Office, including Lieutenant Michael Storey (hereinafter "Lt. Storey") responded to the Lakeview Residence.

18.

When Lt. Storey arrived on the scene, he was told by a civilian that there were multiple guns fired during the incident.

19.

Lt. Storey was also told that a shooter fled in a gray van.

20.

Eventually, Lt. Storey and other Spalding County Sheriff's deputies reported to the Lakeview residence and observed multiple types of shell casings.

21.

Shortly after reporting to the Lakeview residence, Mack returned on foot and identified himself as the driver of the gray van.

22.

Mack told deputies that, at all times during his altercation with Decedent, Mack was unarmed and fled the Lakeview Residence in the gray van in fear for his life.

23.

Despite other witnesses reporting multiple shooters and the observations of officers of multiple types of shell casings, Lt. Storey took Mack at his word and relayed this information to the other deputies.

24.

Mack also told Lt. Storey that if Decedent returned to the Lakeview Residence, Mack would kill him.

25.

Shortly thereafter, around 12:28 am on December 10, 2023, a citizen alerted Spalding County Sheriff's deputies of a person running down the road.

26.

These deputies and their accompanying K9 gave chase to the individual who was, in fact, Decedent.

27.

The pursuing Deputies ordered Decedent to come to them, but Decedent fled headlong away from the deputies.

28.

Deputies pursued Decedent who was ultimately redirected towards the house. Decedent evaded these pursuing deputies by jumping over a chain link fence.

29.

Notably, these Spalding County deputies were close enough to see that Decedent was not brandishing any weapons.

30.

Despite Decedent not brandishing any weapons or otherwise making any threats of physical violence, one of Lt. Storey's fellow deputies frantically transmitted a message via radio that Decedent was coming back to the house.

31.

During this frantic radio message, the fellow deputy failed to communicate the fact that Decedent was unarmed and not brandishing any weapons.

32.

When the call came over the radio, Lt. Storey returned to the Lakeview Residences and requested additional information.

33.

Lt. Storey was again told that Decedent was running back toward the house and given the street he was running on.

34.

Once again, no deputy advised that Decedent was unarmed, not brandishing any weapons, and was in headlong flight in order to escape from pursuing deputies.

35.

Lt. Storey eventually saw Decedent running toward the house.

36.

When he saw Decedent, Lt. Storey immediately drew his firearm.

37.

Lt. Storey ordered Decedent to stop and simultaneously stated that he would shoot him if he continued toward the house.

38.

At the time he encountered Decedent, Lt. Storey did not see Decedent brandish a firearm or make any furtive gestures to reflect that he was reaching for a

firearm. In fact, at the time of this encounter, Lt. Storey observed Decedent's hands and knew that they were empty before he fired the deadly shots.

39.

Almost immediately after issuing this warning, Lt. Storey opened fire on Decedent, striking him in the torso.

40.

Another Spalding County Sheriff's Deputy subdued Decedent immediately thereafter.

41.

Deputies attempted to render aid, but ultimately Decedent succumbed to his injuries.

42.

Consistent with the fact that Lt. Storey did not see Decedent armed with a firearm, no firearm was recovered from Decedent's person, thereby confirming that Decedent was unarmed at the time Lt. Storey shot and killed him.

**COUNT I**

42 U.S.C. § 1983

Excessive Force in Violation of the Fourth Amendment

(As to Defendant Storey)

43.

Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 – 42 as if fully set forth herein.

44.

At all times relevant hereto, Lt. Storey acted under color of state law.

45.

The amount of force Lt. Storey used in his encounter with Decedent was unreasonable and excessive.

46.

Decedent had a right under the Fourth and Fourteenth Amendments to be free from the use of excessive and unreasonable force in the course of an arrest.

47.

Lt. Storey illegally drew his service weapon and fired on Decedent, who was unarmed and fleeing at the time of the shooting.

48.

As a result of Lt. Storey's actions, Decedent suffered serious injury, endured pain and suffering, mental anguish, and ultimately died, as will be proven at trial.

49.

The law being well established in December 2023 that a deputy may not use deadly force to prevent the escape of an apparently unarmed suspected felon; Lt. Storey is not entitled to qualified immunity.

50.

Plaintiffs request compensatory and punitive damages against Lt. Storey in his individual capacity because Lt. Storey acted under color of state law with malice, deliberate indifference, and/or recklessness toward and with callous disregard for Decedent's rights.

**COUNT II**

42 U.S.C. § 1983

*Monell* Doctrine - Failure to Train

(As to Defendant Spalding County)

51.

Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 – 50 as if fully set forth herein.

52.

Defendant Spalding County is liable under the *Monell* doctrine due to its failure to provide proper training to its sheriff's deputies.

53.

The failure to train is evidenced by its deputies' repeated failure to communicate pertinent information, such as Decedent not brandishing a weapon or at the very least communicating that they did not see Decedent with a weapon at that time, i.e., nearly 40 minutes after the 911 calls were made.

54.

When Lt. Storey encountered Decedent, he immediately fired at Decedent, who was an unarmed fleeing suspected felon.

55.

Due to Defendant Spalding County's failure to train its deputies on properly pursuing suspected felons, they were ill-equipped for the pursuit and apprehension of Decedent, resulting in the tragic and unnecessary shooting of Decedent.

56.

Police pursuing fleeing suspected felons is a frequently occurring event.

57.

Despite the frequency of which pursuits of suspected felons occur, Defendant Spalding County failed to provide adequate training on properly pursuing and apprehending fleeing suspects.

58.

Without the proper training on how to pursue fleeing suspects, there is a high probability that Spalding County Deputies would violate citizens' rights, such as the right to be free from unreasonable seizures.

59.

The need to train deputies on pursuing fleeing suspected felons is so obvious that the County's failure to train their deputies amounts to deliberate indifference to citizens' Fourth Amendment rights.

60.

The County's deliberate indifference in failing to train their deputies on properly pursuing and apprehending fleeing suspected felons was the moving force behind the deprivation of Decedent's Fourth Amendment constitutional rights, and ultimately his death.

61.

As a result of Spalding County's failure to adequately train its Deputies, Decedent suffered serious injury, endured pain and suffering, mental anguish, and ultimately died, as will be proven at trial.

**COUNT III**

Georgia Law
Assault and Battery Claims
(As to Defendant Storey)

62.

Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 – 61 as if fully set forth herein.

63.

By shooting Decedent without privilege, Lt. Storey committed assault and battery against Decedent in violation of O.C.G.A. §§ 51-1-13 and 51-1-14.

64.

Lt. Storey acted with malice, deliberate indifference, and/or recklessness toward and with callous disregard for Decedent's rights.

65.

As a result of Lt. Storey's actions, Decedent suffered serious injury, endured pain and suffering, mental anguish, and ultimately died, as will be proven at trial.

**DAMAGES**

66.

Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 – 65 as if fully set forth herein.

67.

As a direct and proximate result of the above-described conduct of Defendants, Decedent suffered serious injury, endured pain and suffering, mental anguish, and ultimately died, as will be proven at trial. Plaintiffs are entitled to the full value of Decedent's life had he not been unlawfully shot and killed.

68.

The aforementioned misconduct of Lt. Storey rose to such a level of bad faith, willfulness, and reckless disregard to authorize the imposition of punitive damages against him.

69.

Plaintiffs are also entitled to recover reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request this Court:

a) Hold a trial by jury on all triable issues;

b) Enter judgment in favor of Plaintiffs against each Defendant for special, compensatory and punitive damages for each violation of Plaintiffs' constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) Award the full value of the life of Michael Antonio Cobb, Jr.;

d) Award Plaintiffs attorney's fees and reasonable expenses of litigation under 42 U.S.C. § 1988 and as authorized under Georgia Law;

e) That all costs of this action be taxed against Defendants;

f) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 5th day of November, 2025.

**BANKS WEAVER, LLC**

***/s/ Gabe Banks***
***/s/ Payden Grizzle***
Gabe Banks
Georgia Bar No. 721945
Payden Grizzle
Georgia Bar No. 270323
*Attorneys for Plaintiffs*

100 Peachtree Street, NW
Suite 2650
Atlanta, Georgia 30303
gabe@banksweaver.com
payden@banksweaver.com
Phone: (404) 891-9280
Fax: (404) 891-9283